IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-01969-WDM-MJW

FRONTRANGE SOLUTIONS USA, INC.,

    Plaintiff,

v.

NEWROAD SOFTWARE, INC., et al.,

    Defendants.

## ORDER ON MOTION TO STRIKE SHAM AFFIDAVITS

Miller, J.

This case is before me on the Motion to Strike Sham Affidavits Pursuant to Federal Rules of Civil Procedure 12(f) and 56(e) (doc no 156) filed by Defendants NewRoad Software, Inc. ("NewRoad"), Nathan George ("George"), Marty Kurzinski ("Kurzinsky"), and David Phelps ("Phelps"). Plaintiff FrontRange Solutions USA, Inc. ("FrontRange") opposes the motion. I have reviewed the parties' written arguments and the evidence submitted with the briefs and conclude that oral argument is not required. For the reasons that follow, I will grant the motion in part.

### Discussion

The background of this dispute is set forth in my order on Defendants' Motion for Summary Judgment, which is issued concurrently with this order. Defendants seek to strike certain portions of affidavits submitted in connection with Plaintiff's response to the motion for summary judgment on the grounds that they are a sham.

In determining the existence of material facts for the purposes of summary judgment, a court may disregard an affidavit that conflicts with the affiant's prior deposition testimony if the court determines the affidavit constitutes an effort to create a sham issue of fact. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). "Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.* In addition, Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge" and that the facts set forth be admissible in evidence. FrontRange is not entitled to rely on the protection of the rule that "[m]aterial factual disputes cannot be resolved at summary judgment based on conflicting affidavits" unless its affidavit meets these requirements. "[C]onclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

I will address the pertinent portions of each affidavit in question in turn.

1.  <u>Affidavit of Kevin Smith</u>

Defendants seek to strike ¶¶ 29-32, 34-36, 40, 45-47, and 51-52 of Mr. Smith's affidavit. In these paragraphs, Mr. Smith testifies that NewRoad promised to "complete" or "continue" WebCenter by way of a proposal and then execution of a consulting service agreement ("CSA"), that these documents constituted NewRoad promised to fix all WebCenter defects as they arose, that FrontRange paid for WebCenter pursuant to the software purchase agreement ("SPA") only because NewRoad promised to resolve all

defects and to add new features, that FrontRange did not know of architecture problems at the time it paid for WebCenter, that NewRoad promised to deliver "turnkey,""enterprise" software, and that FrontRange's outside development team declared that WebCenter was unfixable.

I agree with Defendants that much of this affidavit testimony is inadmissible and should not be considered for the purposes of summary judgment. In extensive deposition testimony, Mr. Smith denied any knowledge or recollection of why he authorized the payment, what the purchase was for, or what were the terms of the transaction. Mr. Smith was provided relevant documents pertaining to the issuance of the check and the transaction and there is no indication that his new testimony is based upon new evidence or confusion about the questions asked. In addition, there is no evidence, and FrontRange does not assert, that he was not cross-examined in the deposition. Accordingly, I agree that the affidavit testimony by Mr. Smith that FrontRange only authorized payment to NewRoad for WebCenter pursuant to the SPA because of NewRoad's alleged extra-contractual promises should be stricken. This testimony will thus be disregarded for the purposes of summary judgment.

Mr. Smith's affidavit testimony that the proposal for further services and CSA constituted a promise by NewRoad to fix all defects as they arose will also be disregarded. In his deposition testimony, Mr. Smith again professed no recognition or knowledge of the proposal or the CSA. He also testified that he had no role in developing the list of requirements that set forth the scope of work under the CSA. Moreover, these documents are unambiguous and their express terms should not be varied by extrinsic evidence or by

conclusory assertions.

Statements by Mr. Smith that at the time the CSA was executed, "FrontRange did not know that WebCenter's basic design was fundamentally wrong and that WebCenter was unfixable" will be disregarded as conclusory and because Mr. Smith's deposition testimony demonstrates he does not have personal knowledge of these issues.

Finally, to the extent Mr. Smith's testimony concerning statements by the outside development is offered as evidence that WebCenter was fundamentally flawed and unfixable, it will be disregarded as inadmissible hearsay.

2.   <u>Affidavit of Lori Samolyk</u>

Defendants seek to strike ¶¶ 20-25, 29, 30-32, and 34 of this affidavit. In these paragraphs, Ms. Samolyk testifies that FrontRange reported defects in the product, that the parties discussed continuing the development of Webcenter, that NewRoad promised to resolve defects that arose out of WebCenter 1.0 and add new features before FrontRange paid for the product, that FrontRange only made payment pursuant to the SPA because of these promises, that the CSA constituted a promise to fix WebCenter 1.0 defects as they arose, that FrontRange did not provide written notice of acceptance because work for WebCenter 1.0 was "ongoing," and that WebCenter was never stable and never fully functional.

Again, much of this affidavit testimony directly contradicts Ms. Samolyk's deposition testimony without providing an explanation as to the conflict. First, I will disregard Ms. Samolyk's affidavit testimony contending that payment was only made because of NewRoad's alleged promise to fix deficiencies as they arose and that the CSA constituted

this promise. This is in direct conflict with her deposition testimony, where she repeatedly stated that the FrontRange purchased the product without condition, that NewRoad had fully performed under the SPA, that the requirements of the SPA were met, that the Product Marketing and Management teams had agreed to accept WebCenter 1.0 on August 25, 2003, and that WebCenter 1.0 did what FrontRange represented in its marketing literature that it could do. Again, the affidavit does not indicate that lack of access to relevant documents, new evidence, or confusion is the basis of these inconsistencies, although Ms. Samolyk does offer some clarification about which marketing literature she was referring to in the last portion of testimony. In addition, as discussed above and in my order on the motion for summary judgment, the CSA and SPA are unambiguous and will not be varied by extrinsic evidence or conclusory assertions.

Defendants also seek to strike Ms. Samolyk's affidavit testimony concerning the quality of the code and software design on the grounds that Ms. Samolyk does not have a technical background and did not have direct knowledge of the problems found by FrontRange's testers and customers. Ms. Samolyk testified in her deposition that her role in the WebCenter project was non-technical. Thus, to the extent that her affidavit testimony is offered for the truth of the matter asserted with respect to technical matters, it will be disregarded for the purposes of summary judgment.

3.  <u>Affidavit of John Hillyard</u>

Defendants seek to strike ¶¶ 6-8, 10, 13-17, and 24-25 of this affidavit. In these paragraphs, Mr. Hillyard testifies that the SPA was for the purchase of a "turnkey" product, as defined in the affidavit, that Nathan George assured him that WebCenter could serve

as the platform for all future web-based versions of HEAT without major modifications required by FrontRange, that he signed the SPA on the condition that WebCenter 1.0 required no work from FrontRange, that NewRoad promised to fix all defects that arose out of WebCenter 1 and add new features and that FrontRange paid for WebCenter in reliance on this promise, and that FrontRange would not have promised to pay or paid royalties under the SPA or paid amounts under the CSA unless NewRoad delivered on its promise to "deliver a fully functioning WebCenter 1.0" and to fix defects as they arose.

In his deposition, Mr. Hillyard testified that he had no involvement in negotiating the specifications for WebCenter 1 under the SPA, that he had no personal knowledge of how the product performed, that FrontRange did not advise NewRoad of defects within 30 days of delivery under the SPA, and that FrontRange accepted WebCenter under the SPA.  He also testified in his deposition that he was not involved in the negotiations for the CSA and that he understood the SPA was for the purchase of the software product, while the CSA was a second agreement for future development work.  Mr. Hillyard's affidavit testimony will be disregarded for the purposes of summary judgment to the extent it conflicts with unambiguous terms of the agreements.  Moreover, Mr. Hillyard's testimony that FrontRange did not accept or only conditionally accepted WebCenter pursuant to the SPA will be disregarded because it is conclusory and conflicts with his deposition testimony without adequate explanation.

4.      <u>Affidavit of Jim Blayney</u>

Defendants seek to strike ¶¶ 4-8, 11-12, 32, and 46 of Mr. Blayney's affidavit.  In the affidavit, he testifies that when WebCenter 1 was delivered it was missing features and

6

suffered from product defects, that the CSA constituted the promise by NewRoad to fix defects and add features required before payment would be made, that FrontRange did not know that the design was fundamentally "wrong" and unfixable, that FrontRange reported numerous defects to NewRoad arising out of WebCenter 1.0, that FrontRange's testing did not identify critical defects before the release of WebCenter 1.0, that FrontRange's outside development team reported the product could not be fixed, and that because WebCenter 2 was never released, FrontRange had to break promises to customers that it would have a working WebCenter product.

In Mr. Blayney's deposition, he testified that he had no knowledge of anyone informing NewRoad that the product delivered was not in conformance with the requirements of the SPA, that to the best of his knowledge NewRoad had performed under the SPA, and that he had not been involved with WebCenter until after WebCenter 1 was purchased. Thus, Mr. Blayney's affidavit testimony concerning the SPA and NewRoad's compliance, as well as the basis for payment under the SPA, does not appear to be based on personal knowledge and will be disregarded. Similarly, Mr. Blayney's affidavit testimony concerning statements made by the outside development team will be disregarded as inadmissible hearsay to the extent it is offered to prove that WebCenter could not be fixed. Mr. Blayney's affidavit testimony that the CSA constituted a promise by NewRoad to fix all previously identified errors and all future problems as they arose will be disregarded as conclusory and in conflict with the unambiguous terms of the agreements.

5. <u>Affidavit of Keith Barr</u>

Defendants seek to strike ¶¶ 3-7 and 19-20 of Mr. Barr's affidavit. In his affidavit, Mr. Barr recounts a conversation from 2003 with Nathan George, in which George described plans for future development of WebCenter and his intent to submit a proposal for a new version, that George's transmission of a proposal for version 2 of WebCenter "confirmed NewRoad's commitment to FrontRange and his continuing effort to making WebCenter a fully functioning piece of web-based enterprise software for FrontRange," that NewRoad agreed to fix defects and add new features not implemented in WebCenter 1.0, that he was not otherwise involved in the WebCenter project but that NewRoad had promised to deliver a "turnkey" product, and that FrontRange's outside development team had stated that WebCenter was unfixable.

In his deposition, Mr. Barr testified that he was not familiar with the SPA, did not know FrontRange had purchased WebCenter until September 2003, was not involved in the decision to pay for WebCenter under the SPA, and had no knowledge of the information provided pursuant to the SPA. He also testified that he had no involvement in the negotiation of the CSA and was not even aware of it before 2004. Accordingly, any affidavit testimony concerning the SPA and CSA will be disregarded because Mr. Barr lacks personal knowledge. In addition, the proposal and email transmitting the proposal are clear on their face; to the extent that Mr. Barr's affidavit testimony offers conclusory opinions about the content of those documents, it will be disregarded. Statements from the outside development team offered to establish the fact that WebCenter was unfixable will be disregarded for the same reasons described above.

6.    <u>Affidavit of Barbie Taylor</u>

Defendants seek to strike ¶¶ 7-13 and 24 of Ms. Taylor's affidavit, in which Ms. Taylor testifies that "shoddy coding" caused problems with WebCenter. In Ms. Taylor's deposition, she testified that she does not have a technical background and does not know how to write or read code. For the most part, Ms. Taylor's affidavit merely summarizes and gives examples of the problems identified in several customer complaint reports. To the extent that Ms. Taylor purports to opine in her affidavit that the cause of the problems was "shoddy coding," it will be disregarded as Ms. Taylor appears to lack personal knowledge in this regard.

7.    <u>Affidavit of Jason Holmberg</u>

Defendants seek to strike ¶¶ 31 and 33 of Mr. Holmberg's affidavit. In these paragraphs, Holmberg authenticates an August 19, 2003 email identifying 51 WebCenter 1.0 bugs, which he claims "would have been sent to NewRoad." He also asserts that FrontRange release WebCenter as its own product because "FrontRange did not know that WebCenter's basic design was fundamentally wrong and that WebCenter was unfixable." Defendants seek to strike these paragraphs because Holmberg only speculates that the list of alleged defects was sent to NewRoad. In addition, Holmberg is not a software developer or engineer and is not qualified to offer an opinion on the design of the software. I agree that Holmberg's statements regarding the basic design of WebCenter are conclusory and that he appears to lack personal knowledge to opine in this regard. Holmberg's statement authenticating the email with the defect list is not stricken but I decline to construe his statement as showing that he has personal knowledge that

9

this list was ever sent to NewRoad.

8.   Affidavit of Kellie Whitney

Defendants seek to strike ¶¶ 3-7 of Ms. Whitney's affidavit. In these paragraphs, she states that "FrontRange protocol requires any joint marketing campaign conducted by a reseller make clear that FrontRange is a separate entity from the reseller." She also describes an email blast created in December 2003 with ECS and FrontRange and then offers opinions about the difference between that email and the NewRoad email blast at issue in this lawsuit. Defendants argue that Ms. Whitney's statement about protocol is not supported by documentation and that there is other evidence that contradicts the reasons for certain design features of the December 2003 email blast. Ms. Whitney's statement concerning protocol appears to be based on personal knowledge and I will not strike it. Ms. Whitney's opinions about the differences between the two email blasts will be considered to the extent they are consistent with the emails themselves. Ms. Whitney's opinion about how the email "appears" to be sponsored by FrontRange is conclusory and will be disregarded.

Accordingly, it is ordered:

1.   Defendants' Motion to Strike Sham Affidavits (doc no 156) is granted in part as set forth in this order.

DATED at Denver, Colorado, on August 31, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge